IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH P. O'LEARY, )
)
Plaintiff, )
) Civil Action No.: 09 C 1428
v. )
) Suzanne B. Conlon, Judge
ACCRETIVE HEALTH, INC., )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Joseph P. O'Leary sues his former employer Accretive Health, Inc. ("Accretive") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a), 42 U.S.C. § 1981 (Count I), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/5 (Count II). O'Leary alleges Accretive terminated him in retaliation for reporting sexual harassment and race discrimination, and failed to pay him an earned bonus. Accretive moves for summary judgment. For the reasons set forth below, the motion is granted.

### BACKGROUND

I.  **Local Rule 56.1**

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. The movant must submit a statement of material facts, not to exceed 80 short numbered paragraphs; each paragraph must cite affidavits, the record, and other supporting materials. Local Rule 56.1(a)(3). The opposing party must respond to each numbered paragraph in the movant's statement including, in the case of disagreement, specific references to the affidavits, parts of the record, and other supporting materials. Local Rule

56.1(b)(3). Failure to comply with this rule results in admission of the facts. Local Rule 56.1(b)(3)(c); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). The opposing party may also submit a statement of supplemental material facts, not to exceed 40 short numbered paragraphs, that require summary judgment denial. Local Rule 56.1(b)(3)(c).

Rule 56.1 requires *short* paragraphs (one or two individual allegations) and citations of evidence. *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (Castillo, J.). In violation of the rule, the parties paste large chunks of deposition testimony and exhibit text into their statements. Rule 56.1(b)(3) requires more than a general denial to rebut a movant's factual allegations; the movant must cite evidentiary materials justifying the denial. *Malec*, 191 F.R.D. at 584. O'Leary repeatedly responds to Accretive's statement of facts by disputing all or part of the statement, but relying on nonresponsive evidence and inaccurate factual characterizations. The court considers the parties' submissions only to the extent they comply with Rule 56.1's requirements.

## II. Background

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits. Accretive provides revenue cycle services to hospitals. Def. Facts ¶ 1. O'Leary began working for Accretive on February 15, 2005 as a senior vice president. *Id.* ¶ 2; Pl. Resp. ¶ 2. The parties dispute O'Leary's responsibilities and level of training and supervision, but it is undisputed he worked on revenue cycle operations at four Michigan hospitals: Borgess Medical Center, Genesys Regional Medical Center, St. Mary's Hospital, and St. Joseph's Hospital. Def. Facts ¶ 3; Pl. Resp. ¶ 3. He reported to chief executive officer Mary Tolan and executive vice president Etienne Deffarges. Def. Facts ¶ 5; Pl. Resp. ¶ 5.

O'Leary was rated a "4," or "exceeds requirements" in his December 2005 performance evaluation. Def. Ex. B(1). But in June 2006, he received a "3," or "meets requirements," for economic and financial contributions, and a "2," or "marginal," for operational model performance. Def. Ex. F(31).[1] Reviewers Tolan and Deffarges noted "rocky" cost control and inadequate adoption of Accretive operating models. *Id.* During the same time period, June 2006, O'Leary received a positive evaluation from peers and subordinates. Pl. Facts ¶ 81.[2] Throughout 2006, Tolan advised O'Leary he needed to improve his poor performance, but he failed to immerse himself in the details of the business, was an ineffective leader, and lacked credibility with clients. Def. Ex. H: Tolan Dep. Tr. at 30-34, 42-45, 54, 81-83, 221-22. O'Leary testified Tolan and Deffarges gave him monthly feedback on areas for improvement (Def. Supp. Ex. F: O'Leary Dep. Tr. at 160), but attests Tolan never communicated performance deficiencies to him (Pl. Ex. 9: O'Leary Decl. ¶ 16).

At some point in the fall of 2006, St. Mary's Hospital's chief executive officer Gary Chawk complained to Accretive about an increase in accounts receivable and growth in bad debt. Def. Facts ¶¶ 18-19. Chawk stated in an October 7, 2006 e-mail: "[t]hings here seem to have gone bad quickly." Def. Ex. F(18). O'Leary complained to Deffarges on October 19, 2006 about "negative vibes" from Tolan and expressed concern about the appropriate manner of managing the relationship with Chawk. Def. Ex. F(22). O'Leary acknowledged the "Gary [Chawk] crisis" on October 23, 2006. Def. Ex. F(24). Genesys hospital's chief executive officer John Keuten

---

[1] The performance evaluation is undated, but the parties do not dispute the June 2006 date.

[2] The parties purport to attach the peer evaluation, but it is not part of the record.

3

told Deffarges that O'Leary was not adding value and was not as knowledgeable as his predecessor Steve Smith. Borgess hospital's chief executive officer Rich Felbinger told Deffarges that O'Leary was not as engaged as Smith. Def. Ex. B: Deffarges Dep. Tr. at 99, 103-06.³ Keuten and Felbinger, however, attest they did not complain or speak negatively about O'Leary's performance to Deffarges. Pl. Ex. 3: Felbinger Decl. ¶¶ 2, 6; Pl. Ex. 6: Keuten Decl. ¶¶ 2, 6. Def. Facts ¶ 20.

Meanwhile, on October 9 or 10, 2006, Accretive employee Blake Graves told his supervisor George Tsokolas that he attended an October 6, 2006 dinner with St. Mary's Hospital site director Rhonda Miller and other subordinate employees Seline Nichols and Shannon Cooper. Def. Facts ¶ 45; Pl. Resp. ¶ 45; Def. Ex. I: Tsokolas Dep. Tr. at 15. Miller bragged about her sex life and claimed sexual relationships with several Accretive executives. Def. Facts ¶ 45; Pl. Resp. ¶ 45. She told 23-year-old Graves that 23-year-old men were more her speed sexually. Def. Facts ¶ 45; Pl. Resp. ¶ 45. In response to Tsokolas' inquiry, Graves stated he considered the conversation a joke and did not feel sexually harassed. Def. Facts ¶ 45; Pl. Resp. ¶ 45; Def. Facts ¶ 47; Def. Ex. C: Graves Dep. Tr. at 45-47.

The next day, Tsokolas reported the incident to O'Leary. Def. Facts ¶ 48. On October 19, 2006, O'Leary reported the situation to Deffarges. Id. ¶ 51. At the time, Deffarges was boarding an airplane and advised O'Leary to report the incident to Tolan. Id. O'Leary met with Tolan on October 23, 2006 to discuss the situation. Id. ¶ 52. That day, O'Leary e-mailed Tolan a

---

³ O'Leary contends the client complaints are inadmissible hearsay. Supervisors may rely on hearsay in evaluating subordinates. *Tomany v. Vill. of Univ. Park*, No. 05 C 1734, 2008 WL 878192, at *2 (N.D. Ill. Mar. 28, 2008) (Zagel, J.). The statements are admissible to show the reviewers' state of mind at the time they evaluated O'Leary's performance. Fed. R. Evid. 803(3); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 716 (7th Cir. 2004).

4

summary of their meeting: his report that Miller's inappropriate comments about her sexual escapades may constitute sexual harassment, and that an investigation was required. Def. Ex. F(9).

Tolan delegated the investigation to Accretive's human resources director Stan Telford, rather than Accretive's general counsel Greg Kazarian because Kazarian and Miller allegedly were having an (unsubstantiated) affair. Def. Facts ¶ 54. O'Leary claims the investigation was not independent because of Kazarian's close relationship with Telford. Pl. Resp. ¶ 54. In an October 26, 2006 report, Telford concluded Miller exercised poor judgment in sharing intimate details about her personal life, but did not violate Accretive policy. Def. Ex. F(11). Miller was reprimanded and warned that further inappropriate conduct could result in termination. *Id.*

In early November 2006, at Chawk's request, Accretive removed O'Leary from the St. Mary's Hospital account, and replaced him with his predecessor Smith. Deffarges Dep. Tr. at 166; Tolan Dep. Tr. at 313-14; Def. Ex. F(6). On November 13, 2006, O'Leary e-mailed Deffarges about his assumption he was "done at St. Mary's" and questioned whether Tolan planned to terminate him. Def. Ex. F(6). He expressed his fear that Accretive was retaliating against him for reporting Miller's conduct. *Id.* He stated Miller "drove" Nichols out of Accretive (Nichols' employment with Accretive ended on October 26, 2006) and was concerned because Nichols was at the dinner where Miller made inappropriate comments and could claim a hostile work environment or "some other harassment related charge." *Id.*

In his December 2006 self-evaluation, O'Leary rated his economic and financial performance for two of his client hospitals a "2," or marginal, and his remaining overall performance (except with respect to completing employee evaluations) a "3," or meets

5

requirements. Def. Ex. F(36). On December 23, 2006, O'Leary e-mailed Deffarges that he was convinced he would be fired because of the "Gary Chawk blow up and my lack of a quick response." Def. Ex. F(7). He said his relationship with Tolan declined after he reported Miller's conduct, and warned that retaliating against him for reporting a sexual harassment risk for the company is a bad strategy. *Id.* He referred to Nichols' potential hostile work environment claim. *Id.* O'Leary was terminated on January 2, 2007. Def. Facts ¶ 2.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is warranted only if the pleadings, discovery, and disclosure materials on file, and any affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cracco*, 559 F.3d at 633. Accretive has the initial burden of demonstrating it is entitled to summary judgment. *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). If Accretive meets its burden, O'Leary must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); *Kramer*, 384 F.3d at 861. The court construes all facts and draws all reasonable inferences in the light most favorable to O'Leary. *Cracco*, 559 F.3d at 633. A genuine issue of material fact exists if the evidence is sufficient to support a reasonable jury verdict in O'Leary's favor. *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001).

### II. Retaliation (Count I)

Accretive argues it terminated O'Leary because of his poor performance, not because he reported Miller's conduct. The methods of proof and elements of Title VII and § 1981

6

discrimination claims are essentially the same. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). O'Leary may prove a Title VII or § 1981 retaliation claim either directly or indirectly. *Id.* O'Leary proceeds under both methods. To establish retaliation under the direct method, he must show he engaged in statutorily protected activity, suffered a materially adverse employment action, and there is a causal connection between the protected activity and adverse action. *Id.* Under the indirect method of proof, the first two elements remain the same, but rather than proving a direct causal link, O'Leary must show he was performing his job satisfactorily, and Accretive treated him less favorably than a similarly situated employee who did not complain of discrimination. *Id.* at 786-87. If O'Leary establishes a *prima facie* case under the indirect method, Accretive must articulate a nondiscriminatory reason for terminating O'Leary; if it does, O'Leary must demonstrate the reason is pretextual. *Id.* at 787.

To show he engaged in statutorily protected activity, O'Leary must establish he reasonably believed in good faith he was complaining about unlawful conduct. *Tate v. Executive Management Servs., Inc.*, 546 F.3d 528 (7th Cir. 2008). Miller's reported comments to her subordinates at the October 6, 2006 dinner were undoubtedly unprofessional, as Accretive's internal investigation concluded. Nevertheless, a complaint of an isolated act of alleged harassment is insufficient to constitute legally protected activity for purposes of a retaliation claim. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269-71 (2001) (*per curiam*). Breeden complained that her male supervisor and co-worker joked in a meeting with her about a job applicant's statement he told someone, "'I hear making love to you is like making love to the Grand Canyon.'" *Id.* at 269. The supervisor looked at Breedon and said he did not understand the statement; the co-worker said he would tell him later, and both men laughed. Breedon

7

reported the conversation to her supervisor, and later claimed retaliation for the complaint. *Id.* at 269-70. The United States Supreme Court held the employer was entitled to summary judgment on the retaliation claim because no reasonable person could have believed that the incident amounted to sexual harassment. *Id.* at 271. To constitute harassment, conduct must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Meritor Savs. Bank v. Vinson*, 477 U.S. 57, 67 (1986).

It is undisputed O'Leary reported Miller's comments at the dinner to Tolan. Def. Facts ¶ 52; Def. Ex. F(9). Viewing the evidence in the light most favorable to O'Leary and drawing all reasonable inferences in his favor, there is no genuine issue of material fact that O'Leary's belief the isolated comments amounted to sexual harassment was reasonable. In fact, he knew Graves considered the conversation a joke and did not feel sexually harassed (Graves Dep. Tr. at 45-47), and had no reason to believe Graves felt sexually harassed (O'Leary Dep. Tr. at 138).

O'Leary contends his report was not limited to Miller's comments at the dinner; he also reported Miller's racial discrimination of African American employee Nichols and Afro Caribbean employee Judith Holmes. In October 2006, Miller allegedly discussed her sexual escapades with Nichols, and asked Nichols whether she ever dated a white man and whether she thought she was too good for a white man. Pl. Ex. 8: Nichols Decl. ¶¶ 17-18. After Nichols' October 26, 2006 termination, Nichols relayed Miller's conduct to O'Leary. *Id.* ¶ 21. In addition, Miller berated Nichols in a work meeting O'Leary attended. O'Leary Dep. Tr. at 85, 101. O'Leary contends he reported Miller's comments and racially discriminatory treatment of Nichols to Smith and Tolan. He provides no evidentiary support. Smith and Tolan testified he merely reported Miller's harsh management style. Pl. Facts ¶ 109; Def. Resp. ¶ 109.

8

Miller allegedly made discriminatory comments about 61 year old Holmes' age. Pl. Ex. 4: Holmes Decl. ¶ 7. Holmes reported Miller's mistreatment to O'Leary in November 2006. *Id.* ¶ 10. In late 2006, Holmes informed Smith that Miller was treating her poorly because of her age and race. *Id.* ¶ 7. According to Smith, Holmes merely complained about Miller's harsh management style. Pl. Ex. 12: Smith Dep. Tr. at 100-03, 114-15. Regardless, O'Leary testified he did *not* report that Miller discriminated against Holmes. O'Leary Dep. Tr. at 113. O'Leary cannot contradict his prior testimony with his subsequent declaration that he reported Miller's potential race discrimination to Telford, Deffarges, and Smith (O'Leary Decl. ¶ 24). *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) (parties may not thwart Rule 56's purposes by creating sham issues of fact with affidavits that contradict their prior deposition testimony). After O'Leary's termination, African American former employees Cathy White and Clara Pinkston sued Accretive for Miller's alleged race discrimination. Pl. Facts ¶ 114. O'Leary presents no evidence he knew about or reported the alleged discrimination. He specifically denied reporting discrimination against White. O'Leary Dep. Tr. at 113. Viewing the evidence in the light most favorable to O'Leary and drawing all reasonable inferences in his favor, he fails to establish a genuine issue of material fact that he engaged in statutorily protected activity.

O'Leary relies on the timing of his termination within two months of purportedly complaining about discrimination to support a causal link between his termination and the reports. Suspicious timing alone rarely satisfies the causation prong of a plaintiff's burden on summary judgment in a retaliation case. *Scaife v. Cook County*, 446 F.3d 735, 742 (7th Cir. 2006). O'Leary received a negative performance evaluation in June 2006 – several months

9

before purportedly reporting discrimination. Def. Ex. F(31). O'Leary disputes certain client complaints, but it is undisputed Chawk requested O'Leary's removal from the St. Mary's Hospital account. Deffarges Dep. Tr. at 166; Tolan Dep. Tr. at 313-14; Def. Ex. F(6). O'Leary disputes his deficient performance. The decision to terminate O'Leary for performance issues is a business decision; it is inappropriate for the court to act as a "super-personnel department." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006).

On November 13 and December 23, 2006, O'Leary reported his concern that he would be fired for reporting discrimination. Def. Ex. F(6) and (7). At this point, O'Leary had already received a negative performance review and client complaint. He cannot create a *prima facie* case by threatening a lawsuit when it appears he is about to be fired. *Nellum v. Ford Motor Co.*, No. 05 C 212, 2008 WL 312922, at *13 (S.D. Ind. Feb. 1, 2008) (Hamilton, J.). Viewing the evidence and reasonable inferences in the light most favorable to O'Leary, he fails to present a genuine issue of material fact that the reporting of purported discrimination caused his termination.

O'Leary fails to establish a *prima facie* case of discrimination under the indirect method of proof. As discussed, he does not demonstrate a genuine issue of material fact that he engaged in statutorily protected activity, or that he was performing his job satisfactorily. He fails to establish Accretive's basis for terminating him – his inadequate job performance – is pretextual. To establish pretext, he must demonstrate more than faulty reasoning or mistaken judgment; he must establish Accretive lied. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838-39 (7th Cir. 2009). O'Leary presents no evidence his inadequate performance was not the real reason for his termination. The chief executive officer of one of his four client hospitals requested his

10

replacement. Deffarges Dep. Tr. at 166; Tolan Dep. Tr. at 313-14; Def. Ex. F(6). He acknowledged the "crisis" with the client. Def. Ex. F(24). O'Leary rated his own performance "marginal" two weeks before his termination. Def. Ex. F(36). Viewing the evidence in the light most favorable to O'Leary and drawing all reasonable inferences in his favor, he fails to present a genuine issue of material fact that his inadequate work performance is a pretextual reason for his termination.

### III. Bonus (Count II)

Accretive argues O'Leary is not entitled to a 2006 bonus because it was not earned. The Illinois Wage Payment and Collection Act requires employers to pay employees bonuses that it unequivocally promised to pay. 820 ILCS 115/2; *McLaughlin v. Sternberg Lanterns, Inc.*, 917 N.E.2d 1065, 1071 (Ill. App. Ct. 2009). A contract to pay a bonus depending on whether the employer's annual sales increased does not entitle the employee to the bonus; the bonus is not guaranteed. *McLaughlin*, 917 N.E.2d 1071; *see also Lillien v. Peak6 Investments*, 417 F.3d 667, 670 (7th Cir. 2005) (offer letter's statement that employee was eligible for discretionary bonus based on the company's profits and employee's contributions did not entitle employee to a guaranteed bonus amount). O'Leary was not guaranteed a bonus; his offer letter stated he is eligible for a "discretionary annual bonus" of up to $125,000 based upon his performance. Def. Ex. F(1). It is undisputed Accretive determined O'Leary's 2006 performance was substandard and terminated him. Def. Facts. ¶ 72. Viewing the evidence and reasonable inferences in O'Leary's favor, he presents no genuine issues of material fact that he was entitled to a 2006 bonus.

11

## CONCLUSION

Accretive's summary judgment motion is granted. Accretive is entitled to judgment on Count I for Title VII and § 1981 retaliation because O'Leary fails to establish a genuine issue of material fact that he engaged in statutorily protected activity, or that the reporting of purported discrimination caused his termination under the direct method of proof. Under the indirect method, O'Leary fails to establish a *prima facie* case of retaliation, or that inadequate work performance is a pretextual reason for his termination. Judgment in favor of Accretive is warranted on Count II for violation of the Illinois Wage Payment and Collection Act because O'Leary fails to establish a genuine issue of material fact that he was entitled to a 2006 bonus.

ENTER:

Suzanne B. Conlon
United States District Judge

January 19, 2010